IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| CITY OF LEBANON, | ) | Civil No. 02-6351-AA |
| Plaintiff, | ) ) | OPINION AND ORDER |
| vs. | ) ) | |
| GEORGIA PACIFIC CORPORATION, a Georgia corporation; FORT JAMES CORPORATION, a Virginia corporation; FORT JAMES OPERATING COMPANY, a Virginia corporation | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Jay T. Waldron
Carson Bowler
Timothy M. Sullivan
Schwabe, Williamson, & Wyatt, P.C.
1211 SW Fifth Ave., Suites 1600-1900
Portland, Oregon 97204
    Attorneys for Plaintiff

Peter H. Glade
Paul Bierly
Markowitz, Herbold, Glade, & Mehlhaf, P.C.

Suite 3000 Pacwest Center
1211 SW Fifth Ave.
Portland, Oregon, 97204
    Attorneys for Defendants

AIKEN, Judge:

Pursuant to Fed. R. Civ. P. 56, defendants move for partial summary judgment on plaintiff's claims of nuisance, fraud, and strict liability. Defendants' motion is denied.

Defendants move to strike portions of the declaration of Brad Berggren in opposition to defendants' second motion for partial summary judgment. Defendants' motion is denied.

Plaintiffs move to strike "additional facts" from defendants' reply concise statement of material facts. Plaintiff's motion is denied.

## BACKGROUND

On or about August 12, 1998, plaintiff City of Lebanon (the "City") purchased an Easement for Public Access and Utilities across a former industrial facility (the "Property") owned and operated by defendant Fort James Corporation in Linn County, Oregon, for the amount of $16,000. The City acquired the Easement to build a sanitary sewer line as part of the City's West Side Interceptor Project.

Prior to starting construction in Fall 1998, the City's environmental specialist, Mr. Joshi, reviewed CH2M Hill's (James River and Fort James' environmental consultant) 1988 report. He contacted Fort James' office and was told there were two reports

concerning the property, and that C2HM Hill would send the reports. C2HM Hill sent him a 1995 report and a separately bound appendix. Mr. Joshi stated that he thought the "two reports" were the report and appendix, and that he had received all of the available information.

C2HM Hill had sent him a 1995 environmental report that discussed environmental investigations of the Fort James' Property, including an estimated 2,000 cubic yards of petroleum contaminated soil that remained in the Property. The contamination arose from a Bunker C fuel storage tank release. The City factored in the 2,000 cubic yards of contamination in its contaminated media management plan for the project. The City also discussed the interceptor route and potential contamination with defendant Fort James and requested any further information on investigation and cleanup. The City later discovered that there was an additional report, dated 1998, that the City did not receive or review. This report showed that there was a plume of petroleum-contaminated soil directly intersecting the interceptor line's proposed alignment. The parties dispute whether C2HM Hill told the City it had "nothing to worry about" and that there would be "no problem" with regard to the proposed alignment.

The City began construction, and it encountered petroleum contamination in soil and groundwater in the trench excavation. It immediately contacted Fort James and CH2M Hill. CH2M Hill and

Fort James were on the site several times during the City's excavation, and both CH2M Hill and the City tested the contaminated soil and groundwater. The City alleges that Fort James failed to inform the City that it was attempting to get a risk based closure through the Department of Environmental Quality ("DEQ") Leaking Underground Storage Tank program, and that it had conducted further cleanup in 1996, and in 1997, until after the City had removed and transported approximately 15,000 cubic yards of contaminated soil off-site over a period of several weeks.

The City alleges that Fort James never informed DEQ that the City was constructing its interceptor until after the City encountered the contamination. City of Albany representatives contacted the DEQ Voluntary Cleanup and Underground Storage Tank Program to communicate Albany's grave concern regarding the extent of petroleum contamination left on the Property and the threat of petroleum releases to its drinking water source, the Santiam Canal.

Plaintiff alleges that representatives from the DEQ Underground Storage Tank, Water Quality and Solid Waste programs oversaw and approved the City's contaminated soil remediation, contaminated groundwater disposal activities, and investigation of the nature and extent of contamination on the Fort James' Property.

Plaintiff filed this action to recover $1.8 million remedial action costs that it was required to incur to protect the City of Albany's drinking water source during construction of the sewer line. The City's remedial action costs include costs it paid to DEQ for oversight of its investigation and remedial action, as well as the City's investigation, removal and remedial action costs.

This court has previously considered and ruled on motions to dismiss filed by both plaintiff and defendants, a motion to amend the complaint, and a motion for partial summary judgment filed by the defendants.

STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©). Substantive law on an issue determines the materiality of a fact. T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply when evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Electrical, 809 F.2d at 630.

## DISCUSSION

### PLAINTIFF'S CLAIM IV- PUBLIC NUISANCE

Plaintiff alleges that defendants are liable for public nuisance, as the contamination caused special injury to its ability to use the groundwater under the easement for a public purpose. Defendants move for summary judgment as to plaintiff's "nuisance claims," but fail to specifically address the public nuisance claim.

"A public nuisance is the invasion of a right that is common to all members of the public." Mark v. State Dept. of Fish & Wildlife, 158 Or. App. 355, 360, 974 P.2d 716, rev. denied, 329 Or. 479, 994 P.2d 127 (1999). Where a private party can

establish that it has suffered an injury of a special character separate and distinct from that suffered by the general public, a claim for private recovery on a public nuisance will exist. City of Portland v. Boeing Co., 179 F. Supp. 2d 1190, 1195 (D. Or. 2001) (internal citation omitted). Oregon has held that a private party who owns land that is affected with a public nuisance will have a private action. Id. "When a public nuisance interferes with an individual's right to use and enjoy his real property, the individual suffers special injury and may bring an action against the perpetrator of the nuisance." Id. at 1195-96.

Plaintiff alleges that defendants are liable for public nuisance as the contamination on the defendants' property caused special injury to the plaintiff's ability to use the groundwater under the easement for a public purpose. Defendants have not addressed the specific components of a public nuisance in their motion for summary judgement. The plaintiff has established disputed issues of fact as to whether the defendants allowed contamination to accumulate on the property and failed to remove it, and whether this contamination interfered with plaintiff's ability to use the groundwater under the property for a public purpose. Plaintiff has also provided evidence that the contamination on defendants' property threatened a public drinking water source, the Santiam Canal.

Because there are disputed issues of fact whether the defendants' underlying conduct caused the interference with plaintiff's use of groundwater under the property, defendants' motion for summary judgment as to the public nuisance claim is denied.

PLAINTIFF'S CLAIM III- PRIVATE NUISANCE

Private nuisance is defined as an "invasion of an individual's interest in the use and enjoyment of land." Macca v. Gen. Tele. Co., 262 Or. 414, 419, 495 P.2d 1193 (1972). To establish a claim for private nuisance, a plaintiff must show evidence of a causal connection between the defendant's activity and the claimed interference with the plaintiff's property. Gronn v. Rogers Constr., Inc., 221 Or. 226, 239, 350 P.2d 1086 (1960). An action for interference with an easement requires a showing of "substantial" or "unreasonable" interference with the grantee's right to use the easement. See Landauer v. Steelman, 275 Or. 135, 141, 549 P.2d 1256 (1976).

The parties dispute whether the plaintiff must establish a causal link between the defendants' conduct and the plaintiff's damages, or between the defendants' conduct and the interference with plaintiff's use and enjoyment of its property. Defendants argue that they are entitled to summary judgment because plaintiff must establish a causal link between the plaintiff's damages and the defendants' underlying conduct, and that

plaintiff has failed to do so.  See Defendants' Second Motion for
Partial Summary Judgment, p. 3.  Plaintiff contends that to
establish liability for a private nuisance, a plaintiff must show
a causal link between the defendants' conduct and the
interference with plaintiff's right to use and enjoy its
property.

Plaintiff is correct in its characterization of the law.  To
prevail on its private nuisance claim, plaintiff must establish
that it suffered an invasion of its possession of property.
Raymond v. Southern Pac. Co., 259 Or. 629, 634, 488 P.2d 460
(1971).  This invasion must be caused by the defendants' conduct.
 Gronn, 221 Or. at 239.  An action for interference with an
easement requires a showing of a "substantial" or "unreasonable"
interference with the grantee's right to use the easement.
Landauer, 275 Or. at 141.

To be entitled to summary judgment on the plaintiff's
private nuisance claim, defendants must show that there is no
disputed issue of fact as to whether the defendants' activity
substantially or unreasonably interfered with the plaintiff's
right to use the easement.  Here, the plaintiff alleges that
defendants' predecessors "used, handled, stored, disposed of and
released hazardous substances at the Property" over which the
City acquired easements by purchase.  The plaintiff alleges that
the defendants elected to keep the hazardous substances in the

ground. The plaintiff alleges that defendants intentionally, recklessly, or negligently interfered with the plaintiff's use and enjoyment of its easement by defendants' releases of petroleum. Finally, the plaintiff alleges that the interference with the use and enjoyment of its easement was substantial and unreasonable and constitutes a nuisance. I agree. Speculation about what alternative actions plaintiff would have taken had it known of the contamination is irrelevant; plaintiff purchased defendants' easement for the purpose of constructing a sewer line through it, and alleges that the contamination encountered by plaintiff caused plaintiff difficulty in completing the construction. Disputed issues of fact exist as to whether the defendants' actions interfered with the plaintiff's ability to use its easement, and whether this interference was substantial and unreasonable. Defendants' motion for summary judgment as to plaintiff's private nuisance claim is denied.

PLAINTIFF'S CLAIM V- MISREPRESENTATION

The traditional elements of a claim for fraud are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) any reliance on the representation's truth; (8) the right to rely thereon; and (9) any consequent and

proximate injury. Oregon Pub. Employees' Ret. Bd. v. Simat, Helliesen, & Eichner, 191 Or. App 408, 423-24, 83 P.3d 350 (2004) (quoting Conzelmann v. N.W.P. & D. Prod. Co., 190 Or. 332, 350, 225 P.2d 757 (1950)). The defendants focus their attention on the elements of causation and reasonable reliance in their motion for partial summary judgment. The court, therefore, will limit its inquiry to whether disputed issues of fact exist as to these two elements.

A. Causation

The court's inquiry on summary judgment is limited to determining whether plaintiff is able to establish defendants' causation of plaintiff's injury as a matter of law. Plaintiff's witnesses testified that it relied on the information the defendants provided, as well as representations made by CH2M Hill, in selecting the route for the sewer line. There is a disputed issue as to whether additional information given to the plaintiff would have affected its decision of where to locate the alignment. Defendants have failed to establish as a matter of law that the information plaintiff lacked was not material or that plaintiff did not rely on defendants' representations.

B. Justifiable Reliance

If a plaintiff is sophisticated and is offered an opportunity to investigate, failure to adequately investigate may result in loss of the right to rely. Coy v. Starling, 53 Or.

App. 76, 81-81, 630 P.2d 1323, rev. denied, 291 Or. 662, 639 P.2d
1280 (1981)(buyers had "equal means of information and are
equally qualified to judge certain factors claimed to contribute
to the value of the property offered for sale.")

The court's inquiry as to justifiable reliance on summary
judgment is limited to determining whether the plaintiff was
unreasonable as a matter of law for relying on defendants'
representations.  The plaintiff here is a sophisticated entity
with the ability to gather relevant information about the site,
and had an independent duty of due diligence, including a duty to
investigate the property before beginning work on the project.
This duty was heightened because the plaintiff had prior
knowledge of some contamination present at the site, based on the
1988 report.

The plaintiff's environmental specialist was told to "review
the information available to the city" regarding contamination of
the property.  He contacted Fort James' office and was told there
were two additional reports about the property.  He was told that
C2HM Hill would send the reports.  C2HM Hill then sent him a 1995
report and a separately bound appendix.  There is a disputed
issue as to whether plaintiff failed to adequately investigate
when it relied on defendants' affirmative offer to send the
additional information, and when the plaintiff assumed that the
information sent by defendants was the full extent of information

available.  Mr. Joshi stated that he thought the "two reports" he was told about consisted of the report and the separate appendix, and that he believed he had received all of the available information.  Defendants allege that it was unreasonable as a matter of law for him to believe that he had all available information.  Plaintiff contends that Mr. Joshi expressly asked Ms. Dahl, a representative of C2HM Hill, if there was anything the City needed to know besides what was available to them.  Plaintiff alleges Ms. Dahl told Mr. Joshi that the City had "nothing to worry about" and that there would be "no problem" with regard to the proposed alignment.

In <u>Oregon Pub. Employees Ret. Bd. v. Simat</u>, the court determined that a large, sophisticated party with a small army of hired experts would <u>probably</u> have unjustifiably relied on misstatements by another party.  <u>Oregon Pub. Employees Ret. Bd. v. Simat</u>, 191 Or. App at 428 (emphasis added).  A "totality of the circumstances" approach is used, and because the plaintiff here is not the state or a large city with proportionally large resources, it is presumably less sophisticated than the party discussed in <u>Oregon Pub. Employees Ret. Bd</u>.  Moreover, when applying summary judgment standards, a party "probably" relying unjustifiably does not meet the required showing of no disputed issue of material fact as to this claim.  Viewing the evidence in the light most favorable to the plaintiff, I find disputed issues

of material fact as to the reasonableness of plaintiff's reliance on defendants' representations. Defendants' motion for partial summary judgment on this claim is denied.

PLAINTIFF'S CLAIM I- STRICT LIABILITY

a. Necessity and National Contingency Plan Compliance

Defendants move for summary judgment on plaintiff's strict liability claim under Or. Rev. Stat. § 465.255. Defendants argue that the expenses incurred by plaintiff were not "remedial action costs," because the plaintiff cannot show that the action was "necessary." The defendants also argue that plaintiff is precluded from recovering response costs because it failed to comply with the National Contingency Plan (NCP). 42 U.S.C. § 9607(a)(4)(B). The NCP is a plan promulgated by the EPA that "delineates specific steps private parties must take in selecting a remedial action plan and cleaning up hazardous waste." <u>Carson Harbor Village Ltd. v. Unocal Corp.</u>, 287 F. Supp. 2d 1118, 1152 (C.D. Cal. 2003).

The term "remedial action costs" is defined by Or. Rev. Stat. § 465.200(24) as "reasonable costs which are attributable or associated with a removal or remedial action at a facility, including but not limited to the costs of administration, investigation, legal or enforcement activities, contracts and health studies." Or. Rev. Stat. § 465.200(23) defines "remedial action" as:

those actions consistent with a permanent remedial action
taken instead of or in addition to removal actions in the
event of a release or threatened release of a hazardous
substance into the environment, to prevent or minimize the
release of a hazardous substance so that it does not migrate
to cause substantial danger to present or future public
health, safety, welfare or the environment.

There is a comprehensive, non-exclusive list of actions included

in this definition.[1]  The term "removal" is similarly defined at

Or. Rev. Stat. § 465.200(25) as:

the cleanup or removal of a released hazardous substance
from the environment, such actions as may be necessary taken
in the event of the threat of release of a hazardous
substance into the environment, such actions as may be
necessary to monitor, assess and evaluate the release or
threat of release of a hazardous substance, the disposal of
removed material, or the taking of such other actions as may
be necessary to prevent minimize or mitigate damage to the
public health, safety, welfare or to the environment, that
may otherwise result from a release or threat of release.

In Hoyt St. Properties, L.L.C. v. Burlington No. & Santa Fe

Railroad Co., 2000 WL 777923 *2 (D. Or. 2000), the court

---

[1]"Remedial action" includes, but is not limited to:
(a) Such actions at the location of the release as storage,
confinement, perimeter protection using dikes, trenches or
ditches, clay cover, neutralization, cleanup of released
hazardous substances and associated contaminated materials,
recycling or reuse, diversion, destruction, segregation of
reactive wastes, dredging or excavations, repair or replacement
of leaking containers, collection of leachate and runoff, on-site
treatment or incineration, provision of alternative drinking and
household water supplies, and any monitoring reasonably required
to assure that the actions protect the public health, safety,
welfare and the environment.
(b) Offsite transport and offsite storage, treatment, destruction
or secure disposition of hazardous substances and associated,
contaminated materials.
(c) Such actions as may be necessary to monitor, assess, evaluate
or investigate a release or threat of release.

interpreted the specific language of these definitions to mean that "remedial action costs" are the reasonable costs attributable to or associated with a clean up of hazardous materials which are necessary to prevent, minimize or mitigate damage to public health, safety, welfare or the environment. This definition does not include *all* costs related to the clean up of hazardous materials; the plaintiff must establish that the costs it seeks to recover are *necessary* to protect the public and the environment. <u>Id</u>. at *2-3 (emphasis added).

To demonstrate that response costs are necessary for CERCLA recovery, "it is generally agreed that this ... requires an actual and real threat to human health or the environment [which exists] [prior to] initiating a response action[.]" <u>Carson Harbor Village, Ltd. v. Unocal Corp</u>., 270 F.3d 863, 871 (9ᵗʰ Cir. 2001). This requirement is applicable for Oregon's Superfund law as well; Oregon's Superfund law was patterned after CERCLA and is construed consistently with its federal counterpart for many of the issues at bar. <u>City of Portland v. Boeing Co.</u>, 179 F. Supp. 2d at 1198. <u>Catellus Dev. Corp v. L.D. McFarland Co</u>., 910 F. Supp. 1509, 1516 (D. Or. 1995). There are, however, some instances where the Oregon statute differs from CERCLA, as will be discussed below. <u>See</u> <u>The Boeing Co. v. Cascade Corp.</u>, 920 F. Supp. 1121, 1131 n. 23 (D. Or. 1996).

Under CERCLA, the determination of whether an action was necessary and consistent with the required protocol (NCP) is one of fact. The Ninth Circuit explicitly states that "the question [of] whether a response action is necessary and consistent with the criteria set forth in the contingency plan is a factual one to be determined at the damages stage." Cadillac Fairview/California, Inc. v. Dow Chemical Co., 840 F.2d 691, 695 (9th Cir. 1988). In Siltec v. Commonwealth Aluminum Corp., the court applied Cadillac and declined to grant the defendant's motion for summary judgment as to whether response costs are "necessary" and "consistent with the national contingency plan," because those were questions of fact to be determined at trial on the merits. Siltec v. Commonwealth Aluminum Corp., 1991 WL 472568, 23 ELR 20230 (D. Or. 1991).

The plaintiff in Siltec began construction and exposed the remains of asbestos tanks buried by defendant, freeing previously stable asbestos fibers into the air. Id. at *9. The defendant moved for summary judgment as to whether Siltec incurred response costs. The court found that the plaintiff incurred response costs because a "release" of a hazardous substance into the "environment" had occurred when defendant demolished and buried the tanks; the fact that this contamination had been stable until plaintiff's actions occurred did not preclude the plaintiff from recovering costs. Id. at *30. See also, CP Holdings, Inc., v.

Goldberg-Zoino & Assoc., 769 F. Supp. 432 (D. N.H. 1991) (when seller knew buyer of building planned to destroy building, seller could be liable under CERCLA).

The holding as to when a "release" occurs is consistent with the definition of "release" under Or. Rev. Stat. § 465.200(22), which includes any leaking into the environment. Moreover, Or. Rev. Stat. § 465.200(12), defines "environment" to include any land surface and subsurface strata.

In Siltec, the release was found to occur even if the containers would not constitute a threat if they remained unopened. Id. at *10, 30. Here, the contamination was released into the environment before the plaintiff began construction; it was released when it soaked into the soil. The defendants' contention that as a matter of law plaintiff's clean up costs were not "necessary" because there was no threat to the environment until plaintiff "released" the contamination is rejected. Defendants' summary judgment motion as to whether the clean up costs were "necessary" is denied.

The plaintiff in Siltec also argued that the NCP issue was not appropriate for summary judgment, and the court agreed. Id. at *38. "In this circuit, . . . it has been specifically held that a failure to comply with the NCP is not a defense to liability, but goes only to the issue of damages." Mid Valley Bank v. North Valley Bank, 764 F. Supp. 1377 (E.D. Ca. 1991);

<u>Cadillac Fairview</u>, 840 F.2d at 695. <u>Cadillac</u> explicitly states that "the question whether a response action is ... consistent with the criteria set forth in the contingency plan is a factual one to be determined at the damages stage." <u>Id.</u>

Whether the plaintiff's response action was necessary and consistent with the Oregon procedures modeled after the NCP is a factual one to be determined at trial. Defendants' motion for summary judgment to dismiss the plaintiff's strict liability claim for failure to comply with the NCP is denied.

b.  Whether City is a Potentially Responsible Party

Defendants claim that plaintiff cannot bring a strict liability claim because it is a potentially responsible party (PRP) under Or. Rev. Stat. § 465.255(1)(d). Section 465.255 (1)(d) provides a PRP includes "any person who, by any acts or omissions, causes, contributed to, or exacerbated the release, unless acts or omissions were in material compliance with applicable laws, standards, regulations, licenses, or permits."

Here, it is clear that the plaintiff's actions "exacerbated" the release, because its digging allowed the contamination to spread. However, the defendants have failed to establish as a matter of law that the plaintiff was in violation of the applicable laws, standards, regulations, licenses, or permits.

Defendants contend that the plaintiff removed the
contaminated soil from the property without first contacting or
securing the appropriate permit from DEQ, and argue that this is
a violation of regulations.  The plaintiff states that it
notified DEQ as it excavated, stockpiled, and disposed of the
contaminated soil, and therefore was not in violation.
Defendants state that the City stockpiled that soil without
conducting appropriate testing to determine the nature and extend
of contamination, in violation of standards.  Plaintiff states
that the stockpiled soil was treated under a Solid Waste Land
Application permit issued by DEQ.

Because there are disputed issues of fact as to whether the
plaintiff's actions were in compliance with applicable laws,
standards, regulations, licenses, or permits, summary judgment to
declare the plaintiff a PRP and thus dismiss the plaintiff's
strict liability claim is denied.  Also, because plaintiff is not
found to be a PRP at this time, its cost recovery for remedial
action costs is not limited to contribution.   <u>Catellus</u>, 910 F.
Supp. at 1516.

CONCLUSION

Defendants' second motion for partial summary judgment (doc.
91) is denied. Plaintiff's motion to strike (doc. 137) and
defendants' motion to strike (doc. 129) are also denied.
Defendants' request for oral argument is denied as unnecessary.

IT IS SO ORDERED.

Dated this  $2$   day of May 2005.


_____
Ann Aiken
United States District Judge