IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CITY OF LEBANON,                      )        Civil No. 02-6351-AA
                                      )
              Plaintiff,              )
                                      )        OPINION AND ORDER
         vs.                          )
                                      )
GEORGIA PACIFIC CORPORATION, a )
Georgia corporation; FORT JAMES)
CORPORATION, a Virginia               )
corporation; FORT JAMES               )
OPERATING COMPANY, a Virginia  )
corporation                           )
                                      )
              Defendants.             )
_____)

Jay T. Waldron
Carson Bowler
Timothy M. Sullivan
Schwabe, Williamson, & Wyatt, P.C.
1211 SW Fifth Ave., Suites 1600-1900
Portland, Oregon 97204
    Attorneys for Plaintiff

Peter H. Glade
Paul Bierly
Markowitz, Herbold, Glade, & Mehlhaf, P.C.
Suite 3000 Pacwest Center
1211 SW Fifth Ave.
Portland, Oregon, 97204
    Attorneys for Defendants

AIKEN, Judge:

1 - OPINION AND ORDER

Pursuant to Fed. R. Civ. P. 56, defendant Georgia Pacific moves for summary judgment arguing that it should be dismissed from this case. Plaintiff cross moves for partial summary judgment arguing that as a matter of law defendants Georgia Pacific and Fort James should each be held strictly liable, and moves for summary judgment on various defenses and counterclaims asserted by defendants.

## BACKGROUND

On or about August 12, 1998, plaintiff City of Lebanon (the "City") purchased an Easement for Public Access and Utilities across a former industrial facility (the "Property") owned and operated by defendant Fort James Corporation in Linn County, Oregon, for the amount of $16,000. The City acquired the Easement to build a sanitary sewer line as part of the City's West Side Interceptor Project.

Prior to beginning construction in the fall 1998, the City's environmental specialist, Mr. Joshi, reviewed a 1988 report authored by CH2M Hill, James River and Fort James' environmental consultant. Joshi contacted Fort James' office and was told there were two reports concerning the Property, and that C2HM Hill would mail those reports to Joshi. C2HM Hill sent him a report dated 1995 and a separately bound appendix. Mr. Joshi stated that he thought the "two reports" were the report and appendix, and that he had received all of the available information.

C2HM Hill had sent him a 1995 environmental report that discussed environmental investigations of the Fort James' Property and an estimated 2,000 cubic yards of petroleum

contaminated soil that remained in the Property. The contamination arose from a release from a Bunker C fuel storage tank. The City factored in the contamination in its contaminated media management plan for the project. The City also discussed the interceptor route and potential contamination with defendant Fort James and requested any further information concerning investigation and cleanup. There was an additional report, however, dated 1998, that the City did not receive or review. This report showed that there was a plume of petroleum-contaminated soil directly intersecting the interceptor line's proposed alignment. The parties dispute whether C2HM Hill told the City it had "nothing to worry about" and that there would be "no problem" with regard to the proposed alignment.

The City began construction, and it encountered petroleum contamination in both soil and groundwater in the trench excavation. It immediately contacted Fort James and CH2M Hill. CH2M Hill and Fort James were on the site several times during the City's excavation, and both CH2M Hill and the City tested the contaminated soil and groundwater. The City alleges that Fort James failed to inform the City that it was attempting to get a risk based closure through the Department of Environmental Quality ("DEQ") Leaking Underground Storage Tank program, and that it had conducted further cleanup in 1996, and again in 1997, until after the City had removed and transported approximately 15,000 cubic yards of contaminated soil off-site over a period of several weeks.

Plaintiff alleges that Fort James never informed DEQ that the City was constructing its interceptor until after the City

encountered the contamination. City of Albany representatives contacted the DEQ Voluntary Cleanup and Underground Storage Tank Program to express Albany's grave concern regarding the extent of petroleum contamination left on the Property and the threat of petroleum releases to its drinking water source, the Santiam Canal.

Plaintiff alleges that representatives from the DEQ Underground Storage Tank, Water Quality and Solid Waste programs oversaw and approved the City's contaminated soil remediation, contaminated groundwater disposal activities, and investigation of the nature and extent of contamination on the Fort James' Property.

Plaintiff filed this action to recover $1.8 million remedial action costs that it incurred to protect the City of Albany's drinking water source during construction of the sewer line. The City's remedial action costs included costs paid to DEQ for oversight of its investigation and remedial action, as well as the City's investigation, removal and remedial action costs.

This court has spent considerable time previously ruling on several motions, including motions to dismiss filed by both plaintiff and defendants, a motion to amend the complaint, motions to strike, and two motions for partial summary judgment filed by the defendants.

<u>STANDARDS</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©). Substantive law on an issue determines the materiality of a fact. T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply when evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Electrical, 809 F.2d at 630.

## DISCUSSION

Defendant Georgia Pacific moves for summary judgment arguing that it should be dismissed from this lawsuit because the only connection it has with the Property is that it is the parent company of Property owner, Fort James. Plaintiff cross moves for partial summary judgment arguing that Georgia Pacific is either a "successor in interest" to Fort James and therefore liable, or

"directly liable."  Plaintiff also moves for summary judgment arguing that Fort James is strictly liable.  It is undisputed that Georgia Pacific was not involved in releasing any contaminants, nor was it a party to the easement with the City.

The general rule is that asset purchasers are not liable as successor corporations.  <u>Atchison, Topeka & Santa Fe Ry. Co. v. Brown & Bryant, Inc</u>., 132 F.3d 1295, 1298 (9th Cir. 1997), <u>amended and superseded by</u>, 159 F.3d 358 (9th Cir. 1997).  That rule is subject to four exceptions: (1) agreement to assume liabilities; (2) "de-facto" consolidation or merger; (3) continuation of seller; and (4) fraud.  <u>Id</u>.

Oregon law regarding liability of successors-in-interest is substantially similar.

> The general rule is that where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor...
> To this general rule there are four well recognized exceptions, under which the purchasing corporation becomes liable for the debts and liabilities of the selling corporation. (1) Where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporations; (3) where the purchasing corporation is merely a continuation of the selling corporation; and (4) where the transaction is entered into fraudulently in order to escape liability for such debts."

<u>Erickson v. Grande Ronde Lumber Co</u>., 162 Or. 556, 568, 92 P.2d 170 (1939).

A. Successor Liability

Plaintiff alleges first that Georgia Pacific is liable as a successor-in-interest because a merger took place between Georgia Pacific and Fort James.  A merger occurs when one company absorbs itself into the other.  A merger exists "where one of the

constituent companies remains in being absorbing or merging into itself all of the other constituent companies." <u>Dairy Cooperative Ass'n v. Brandes Creamery</u>, 147 Or. 488, 498, 30 P.2d 338 (1934).

Georgia Pacific moves for summary judgment, arguing that it is not liable as a successor-in-interest because as a matter of law it did not merge with Fort James. Plaintiff alleges that Georgia Pacific is, in fact, liable because its acquisition of Fort James amounted to a merger. Georgia Pacific argues that the merger was between Fort James and one of Georgia Pacific's wholly owned subsidiaries, Fenres Acquisition Corp.

Georgia Pacific states that it created a wholly owned subsidiary, Fenres Acquisition Corporation, for the sole purpose of acquiring 100 percent of the stock of Fort James Corporation. Georgia Pacific states that Fenres subsequently merged into Fort James, and since that time, Fort James has been a separate legal entity and a wholly-owned subsidiary of Georgia Pacific.

Plaintiff argues that there exists disputed issues of fact as to whether a merger occurred. Plaintiff relies on the prospectus which characterized the business strategy of the transaction and the transaction itself. The plaintiff also relies on Fort James' website, press releases, and other public statements by Georgia Pacific regarding its acquisition of Fort James.

The evidence relied on by plaintiff does not change the nature of the transaction, which was between Fort James and Georgia Pacific's wholly owned subsidiary. The fact that companies might have described their agreement as a "merger" or

"consolidation" is not controlling. <u>Ladjevardian v. Laidlaw-Coggeshall, Inc</u>., 431 F. Supp. 834, 838-839 (S.D.N.Y. 1977) (internal citation omitted). There exists extensive documentation to describe the precise nature of the merger at issue. According to the Agreement and Plan of Merger, the merger was between Fort James and Fenres Acquisition Corp, identified as Merger Sub, with Fort James being the survivor. The "Purchaser" is also specifically identified as Fenres, not Georgia Pacific. Other documents supporting the merger between Fort James and Fenres include the Certificate of Incorporation issued to Fenres by the Commonwealth of Virginia, the Articles of Incorporation and Bylaws, the Articles of Merger, the Plan of Merger, the Certificate of Merger issued by the Commonwealth of Virginia, and the Notice of Merger.

I find that Georgia Pacific was not merged with Fort James; Fort James merged with Fenres, a wholly owned subsidiary of Georgia Pacific, and therefore, Georgia Pacific cannot be liable based on successor liability.

        B.  Direct Liability

In its motion for summary judgment Georgia Pacific also alleges that it is not directly liable for plaintiff's response costs. Plaintiff cross moves for partial summary judgment asserting that Georgia Pacific is directly liable as an operator as a result of its duties and responsibilities derived from the acquisition. I find that a material issue of disputed fact exists on this issue.

A parent corporation may have either direct or derivative liability for environmental costs at a facility owned by a

subsidiary. See United States v. Bestfoods, 524 U.S. 51 (1998).
A parent corporation has derivative environmental liability for
its subsidiary under a corporate veil piercing analysis. Id. at
62-63. Direct liability arises when a parent corporation
actually controls the facility in question and thus has
"operator" status. Id. at 65-66. The control necessary to give
rise to operator liability includes managing, directing or
conducting operations related to the environmental contamination,
including anything to do with leaking or disposal of hazardous
substances found at the site, or any decisions about compliance
with environmental laws. Id. at 66-67.

Oregon law is substantially the same. The courts have held
that a shareholder can act to create direct liability by virtue
of the shareholder's own participation in the conduct that gave
rise to the plaintiff's cause of action. Amfac Foods, Inc. v.
International Systems & Controls Corp., 294 Or. 94, 103, 654 P.2d
1092 (1982). See also, Acrymed, Inc. v. Convatec, 317 F. Supp.2d
1204, 1214 (D. Or. 2004)(applying Oregon law and granting summary
judgment, finding no evidence that defendant was an active
participant).

Georgia Pacific alleges it is not liable because it had no
involvement in the underlying facts of the case and did not have
any interaction with Fort James until after the cleanup had
occurred. Liable parties, as defined by Or. Rev. Stat. § 465.255
(1)(b), include "[a]ny owner or operator who became the owner or
operator after the time of the acts or omissions that resulted in
the release, and who knew or reasonably should have known of the
release when the person first became the owner or operator."

Georgia Pacific has not denied that it assumed the duties of an "operator" of the facility following the acquisition. Georgia Pacific also knew or should have known of the release of hazardous substances because the cleanup had already occurred and Fort James' former employees state that they told Georgia Pacific about the environmental conditions.

Georgia Pacific further alleges that it was not an active participant with the Property. In <u>Acrymed v. Convatec</u>, the court applied Oregon law and found that there was no evidence that the defendant parent corporation was an active participant in the activity between the subsidiary and the plaintiff. 317 F. Supp. 2d at 1214. There, the parent corporation named the subsidiary and its products as a "core business" on its website, and reported to shareholders that it had "landed" several new products made by the subsidiary. <u>Id</u>. There were also statements by the subsidiary's president that they "were all employees" of the parent corporation, and the subsidiary's employees were paid with the parent corporation's checks. <u>Id</u>. This evidence was not found sufficient to create an issue of material fact as to whether the parent corporation was an active participant; moreover, the parent was found not directly liable to the plaintiff. <u>Id</u>.

Plaintiff here contends that during the acquisition, Georgia Pacific investigated and noted the environmental liabilities associated with Fort James. Plaintiff alleges that

Georgia Pacific directed and managed the operations relating to environmental contamination of the Property, and made decisions about compliance with environmental laws as the laws related to the Property. Plaintiff also alleges that employees with direct knowledge of the site transferred from Fort James to Georgia Pacific, working in the same capacity. These employees included both Fort James' Senior Environmental Engineer and its Manager of Field Services. Moreover, Carol Whitaker, the Manger of Environmental Mill Services, was an employee of Fort James involved in the investigation and clean-up of the property, and her duties remained the same after the transaction. The parties agree that Georgia Pacific employees have participated in the management of the Property.

Georgia Pacific denies that it is directly liable, stating that it had no involvement with the underlying facts of the case. However, the Supreme Court has held that if the parent has control over the operation of the subsidiary's facility, an issue of fact is raised as to direct liability. United States v. Bestfoods, 524 U.S. at 71. There, an employee of the parent "actively participated in and exerted control over a variety of [the facility's] environmental matters." Id. at 73. This fact overcame the presumption that a parent corporation is not liable for the acts of its subsidiary. Id. at 61.

Defendant reiterates that the acquisition took place long after the clean-up, and that this should preclude Georgia Pacific from being liable for the clean-up costs. As noted above, no exemption is found in Or. Rev. Stat. § 465.255 for operators who acquire property with existing disputes over costs related to a former release. The statute defines liable parties as simply "[a]ny owner or operator who became the owner or operator after the time of the acts or omissions that resulted in the release, and who knew or reasonably should have known of the release when the person first became the owner or operator." Or. Rev. Stat. § 465.255(1)(b).

The facts provided by plaintiff create a disputed issue of fact as to whether Georgia Pacific was an "operator" and an "active participant" who may be directly liable to plaintiff. Therefore, Georgia Pacific's motion for summary judgment is denied. Similarly, plaintiff's motion for summary judgment to declare Georgia Pacific a liable party as a matter of law, is also denied.

Fort James' Liability

Plaintiff's motion for partial summary judgment also alleges that Fort James is a liable party as a matter of law under Or. Rev. Stat. § 465.255. Defendant argues that plaintiff is a Potentially Responsible Party (PRP) under Or. Rev. Stat. § 645.255(1)(d) and cannot prevail on its strict

liability claim. This court, however, previously held that there is a disputed issue of fact as to whether the plaintiff is a PRP.

If the Plaintiff is a PRP, then it cannot pursue a pure cost recovery claim under Or. Rev. Stat. § 465.255, but is limited to a contribution claim under Or. Rev. Stat. § 465.257. <u>Port of Portland v. Union Pac. R. Co.</u>, 1999 WL 1080328 *15 (D. Or. 1999); <u>Catellus Dev. Corp. v. L.D. McFarland Co.</u>, 910 F.Supp. 1509, 1516 (D. Or. 1995).

Because there is a disputed issue of fact as to whether plaintiff is a PRP, this court cannot hold as a matter of law that Fort James is liable under Or. Rev. Stat. § 465.255. Therefore, plaintiff's motion for partial summary judgment to declare Fort James a liable party under Or. Rev. Stat. § 465.255 is denied.

<u>Remainder of Plaintiff's Motion for Partial Summary Judgment</u>

1. <u>Oregon Tort Claims Act</u>

Plaintiff further moves for summary judgment on defendants' counterclaims arguing that defendants failed to comply with Oregon's Tort Claims Act and that plaintiff is immune from liability for the acts or omissions alleged in defendants' counterclaims.

A. Notice Requirement

The plaintiff first asserts that defendants failed to

comply with the Notice requirement under the Tort Claims Act.
The Act provides that "[n]otice of claim shall be given . . .
within 180 days after the alleged loss or injury."  Or. Rev.
Stat. § 30.275(2)(b).  The contamination at issue on the
Property was encountered by the plaintiff in the fall 1998.
Plaintiff filed the lawsuit at bar on December 20, 2002.
Defendants responded with a stipulated motion to extend time to
file an Answer which this court granted. The date the Answer
was due, defendants filed a motion to dismiss.  That motion was
fully briefed including plaintiff's unopposed request to file a
surreply which was filed on June 16, 2003.  The motion was then
ultimately decided by this court on August 15, 2003.  The
defendants then filed their Answer, Defenses and Counterclaims
on September 9, 2003.

I find that the Notice requirement of the Oregon Torts
Claim Act has been satisfied here.  The sufficiency of the
notice given must be determined with the object of the statute
in mind and technically deficient claims should not be barred
where the purpose of the statute is served.  The Oregon Supreme
Court held that the purpose of Tort Claims Act notice sections
"is to give the public body timely notice of the tort claim and
to allow its officers an opportunity to investigate matters
promptly and ascertain all necessary facts."  Urban Renewal
Agency v. Lackey, 275 Or. 35, 41, 549 P.2d 657 (1976).  After

14 - OPINION AND ORDER

the Court decided the <u>Urban Renewal</u> case, the Oregon
legislature added language to Or. Rev. Stat. § 30.275(1)
arguably reflecting a legislative intent that the notice
requirements be strictly complied with.  The additional
language reads, "A notice of claim which does not contain the
information required by this subsection, or which is presented
in any other manner than herein provided, is invalid, except
that failure to state the amount of compensation or other
relief demanded does not invalidate the notice."  Or. Rev.
Stat. § 30.275(1), as amended by Or.Laws 1977, ch. 823, s 3.

The Oregon Supreme Court then spoke again on this issue in
<u>Brown v. Portland School Dist. No. 1</u>, 291 Or. 77, 628 P.2d 1183
(1981)(en banc).  There the Court acknowledged the additional
language to Or. Rev. Stat. § 30.275(1), however, reasoned that,
"[t]here is no suggestion that the proponents or the
legislature intended to preclude recovery or escape liability
by draconian enforcement of technical requirements or to
preclude compliance where notice proper in form and content was
actually received by the statutorily designated official."  <u>Id.</u>
at 81.  The Court further held that, "[t]o achieve the Act's
purpose of prompt notice to public bodies, notice of claims
must be timely received by the correct official.  The amended
statute describes the manner in which notice is to be given,
but its purpose is to bar claims where proper notice is not

received by the proper official." _Id._ at 82.  Finally, the
Court held that "where notice required by ORS 30.275(1) is
actually received by the statutorily designated official, the
statute has been substantially complied with and the notice of
claim is valid." _Id._ at 82-83.

That is exactly the situation we have here.  Defendants
filed a stipulated motion to extend time to answer, defendants
then timely filed a motion to dismiss which was ultimately
denied by this court, defendants then properly filed their
Answer, Defenses and Counterclaims.  I find that pursuant to
the Oregon Supreme Court's analysis and holding in _Brown_, that
defendants' Answer containing counterclaims filed in response
to plaintiff's complaint serves as adequate notice pursuant to
Or. Rev. Stat. § 30.275(1).  Defendants' Answer, Defenses and
Counterclaims were properly and timely filed; actually received
by the statutorily designated official thus providing plaintiff
with timely notice of the tort claim and allowing its officers
adequate opportunity to investigate matters and ascertain all
necessary facts.  To hold otherwise would be doing exactly what
the Oregon Supreme Court cautioned against in _Brown_ -
precluding recovery or escaping liability by "draconian
enforcement of technical requirements . . . where notice proper
in form and content was actually received by the statutorily
designated official." _Id._ at 82.  Plaintiff's summary judgment

motion is denied on this issue.

B. Two-year Limitations Period

Plaintiff next asserts that defendants' counterclaims are untimely. Or. Rev. Stat. § 30.275(9) provides that an action covered by the Oregon Tort Claims Act "shall be commenced within two years after the alleged loss or injury." Plaintiff argues that at the very latest, defendants knew in the fall of 1998 that plaintiff had encountered contamination on their Property, and therefore defendants' counterclaims are barred.

Defendants respond that plaintiff delayed filing suit until late 2002, "about four years after the construction was done and nearly two years after the bulk of the 'remediation' was completed." Defendants' Response to Plaintiff's Motion for Partial Summary Judgment, p. 14. Defendants assert that it would be "patently unfair" to allow the plaintiff to assert a statute of limitations defense to defendants' counterclaims under these circumstances. I agree. The parties concede that there is no Oregon law on point and therefore look to federal law. Both parties cite federal law in their favor. I am persuaded by the cases following United States v. Capital Transit Co., 108 F. Supp. 348, 350 (D.D.C. 1952), which held, "it would seem to be contrary to the spirit of the Federal Tort Claims Act to permit the United States to wait until the two years have expired and then sue an individual for damages and

prevent such individual from having litigated all issues which
might properly have been determined within the two year
period." See also, United States v. Southern Cal. Edison Co.,
229 F. Supp. 268, 269 (S.D. Cal. 1964)(same). Therefore, I
find that defendants' counterclaims are not barred by the two-
year statute of limitation and deny plaintiff's summary
judgment motion on this issue.

C. Immunity

Plaintiff next asserts that it is immune from defendants'
counterclaims because the decisions made with respect to the
location of the Project were discretionary. Or. Rev. Stat. §
30.265(3)(c) provides, in part, that "[e]very public body and
its officers, employees and agents acting within the scope of
their employment or duties . . . are immune from liability for
. . . [a]ny claim based upon the performance of or the failure
to exercise or perform a discretionary function or duty,
whether or not the discretion is abused."

Defendants argue that its counterclaims are for
recoupment, "regardless of their label," and therefore not
barred by sovereign immunity. I agree. Recoupment "is an
appropriate equitable remedy that 'reduces, mitigates, or
abates damages alleged by plaintiff.'" State ex rel. Key West
Retaining Syss., Inc. v. Holm II, Inc., 185 Or. App. 182, 190,
59 P.3d 1280 (2002), rev. denied, 335 Or. 402, 68 P.3d 231

(2003).  "Recoupment is confined to matters arising out of and connected with the transaction upon which the action is brought." <u>Welsh v. Case</u>, 180 Or. App. 370, 376, 43 P.3d 445 (2002).  Here, defendants have alleged that plaintiff negligently and recklessly constructed a sanitary sewer line over property it did not own, disturbing and causing the release of otherwise stable pollutants.  This same transaction forms the basis of plaintiff's claims.

Further, I find that defendants' recoupment counterclaims are not barred by sovereign immunity.  In <u>United States v. Montrose Chem. Corp. of Calif.</u>, 788 F. Supp. 1485, 1492-93 (C.D.Cal. 1992), the court held that Eleventh Amendment immunity is waived as to compulsory recoupment counterclaims in tort by filing a CERCLA action.  Similarly, in <u>Georgia Dept. of Human Resources v. Bell</u>, 528 F. Supp. 17, 26 (N.D.Ga 1981), the court held that "by bringing suit against a private party the State waives its Eleventh Amendment immunity and consents to the court's jurisdiction of . . . counterclaim[s] asserted defensively, by way of recoupment, for the purpose of defeating or diminishing the State's recovery, but not for the purpose of obtaining an affirmative judgment against the State" (internal citations omitted).  Finally, in this District, the court held that by bringing an action in federal court, the state waives it Eleventh Amendment immunity with respect to all

counterclaims arising out of the same transaction or occurrence, "at least to the extent that the counterclaims do not exceed the amounts sought in the state's claim." <u>Oregon v. City of Rajneeshpuram</u>, 598 F. Supp. 1217, 1219 (D. Or. 1984).

Here, defendants' counterclaims arise out of the same transaction or occurrence, and the counterclaims sought by the defendants do not exceed the amount sought by the plaintiff. Defendants' counterclaims seek to reduce or offset any recovery by the plaintiff. These counterclaims are correctly characterized as recoupment and are not barred by plaintiff's claim of immunity. Plaintiff's summary judgment motion is denied on this issue.

2. <u>Defendants' "Third-Party Fault" Defense</u>

Plaintiff moves for summary judgment as to the defendants' "third-party fault" defense, asserting that the defendants' allegations indicate that the preexisting contamination on the property was not "caused solely by" the plaintiff. Defendants raise this defense under Or. Rev. Stat. § 465.255(2)(b)©), and allege, "any migration of hazardous substances in 1998, 1999, or 2000 was caused exclusively by the City of Lebanon as a result of its failure to exercise due care in the planning and construction of its Westside Interceptor Project." Defendants' Answer, p. 9, ¶ 55.

///

This court has previously ruled that defendants could proceed with the "third-party fault" defense to allow the defendants to prove facts that would show that the damages resulting from the release were caused solely by the plaintiff. The defendants have introduced evidence indicating that the contamination was relatively immobile until the plaintiff began construction, and this raises an issue of fact as to whether the damages resulting from the release were caused solely by the plaintiff.

Plaintiff's motion for summary judgment to dismiss the defendants' "third-party fault" defense is denied at this time with leave to renew at trial.

3. Defendants' "Coming to the Nuisance" Defense

Plaintiff moves for summary judgment on defendants' "coming to the nuisance" defense. Plaintiff asserts that this defense should be dismissed arguing that it cannot be raised against a municipality under Oregon law. Defendants contend that the applicability of this defense depends on whether the plaintiff had notice of the nuisance before it acquired the property at issue.

I agree that under the alleged facts of this case, the issue that must first be addressed is whether the plaintiff had notice of the nuisance. See City of Portland v. The Boeing Company, 179 F. Supp.2d 1190 (D. Or. 2001) ("[t]he evidence

establishes that no one was aware of the extent of the interference by the nuisance at the time plaintiff purchased and planned the Wells.  The coming to the nuisance defense does not apply in this instance").  I decline to address at this time whether this defense can be applied against a municipality.

Defendants contend that there are disputed issues of material fact as to the issue of notice, I agree.  Defendants have provided evidence that plaintiff had knowledge of the environmental contamination on the property and that the plaintiff was expressly told not to construct its sewer line on the property because of the risk of pollution.

Because there are disputed issues of material fact as to whether plaintiff had notice of the nuisance before it acquired the property, plaintiff's motion for summary judgment as to this defense is denied at this time with leave to renew at trial.

4. <u>Defendants' Contractual Terms Defense</u>

Finally, plaintiff moves for summary judgment as to defendants' breach of contractual terms defense, arguing that as a matter of law plaintiff met the obligations of the easement.  Defendants allege that summary judgment should be denied because there are issues of fact as to whether the plaintiff breached a promise to accept responsibility for the

results of plaintiff's digging on the property.

The provisions at issue are as follows: (1) upon performing any maintenance, the City will make reasonable efforts to return the site to its original condition, and (2) the City will "excavate and refill ditches and/or trenches for the location of said utilities." Defendants argue that these terms, taken together, create an obligation for the plaintiff to accept responsibility for the results of digging on the property. However, Oregon law directs a court to look only at the objective terms of a contract. See Holdner v. Holdner, 176 Or. App. 111, 120, 29 P.3d 1199 (2001) ("[i]n determining whether a contract exists and what its terms are, we examine the objective manifestations of intent, as evidenced by the parties' communications and acts")(internal quotation omitted). I agree with plaintiff that defendants' interpretation adds additional obligations into the easement, and therefore I will examine only the express terms to determine whether summary judgment should be granted.

Plaintiff argues that no reasonable factfinder could find that plaintiff violated the promise to "make reasonable efforts to return the site to its original condition." Defendants contend that "original" condition meant the condition in which the contamination was still located in the ground, and therefore plaintiff violated this contractual term. Plaintiff

contends that its actions satisfied the contractual terms because plaintiff undertook "reasonable efforts" to restore the site: plaintiff could not have put the contamination back into the soil because DEQ's rules prohibited it, plaintiff followed DEQ's rules in the restoration, and plaintiff used clean fill to replace the contaminated soil.

The plaintiff had no choice other than to replace the contaminated soil. Defendants' interpretation of this term requires the plaintiff to perform the impossible, and no reasonable juror could find in favor of defendants as to this issue. Plaintiff's motion for summary judgment as to this defense is granted.

### CONCLUSION

Defendant Georgia Pacific's motion for summary judgment (doc. 96) is granted in part and denied in part. Georgia Pacific's motion is granted in that Georgia Pacific cannot be liable based on successor liability; however, Georgia Pacific's motion is denied due to questions of fact as to whether Georgia Pacific is directly liable.

Further, plaintiff's motion for partial summary judgment (doc. 100) is denied as to the issue of strict liability for defendants Georgia Pacific and Fort James; denied regarding plaintiff's motions against defendants' counterclaims based on the Oregon Tort Claims Act; denied with leave to renew as to defendants' defenses of "third-party fault; and "coming to the

24 - OPINION AND ORDER

nuisance;" and granted with regard to defendants' "contractual

terms" defense.

IT IS SO ORDERED.


Dated this __16__ day of May 2005.




                                    _____/s/ Ann Aiken_____
                                          Ann Aiken
                                  United States District Judge